STATE OF INDIANA *v.* SCHELTON.

[No. 25,830.   Filed July 29, 1933.]

*Arthur L. Gilliom,* Attorney-General, *James M. Ogden,* Attorney-General, *Harry L. Gause* and *E. Burke Walker,* Deputy Attorneys-General, for the State.

*John H. Schlencher,* for appellee.

HUGHES, J.—The appellee was charged by affidavit, filed May 20, 1927, with the violation of the motor vehicle law by speeding.   Section 10140, Burns 1926.

A warrant was issued for the arrest of the appellee, and on May 21, 1927, he was brought before the justice of peace of Pleasant Township, in Steuben County, Indiana, who entered a plea of not guilty after appellee stood mute and then, after hearing the evidence, found

him guilty and assessed a fine of one dollar and costs of the action.

The appellee appealed to the circuit court, and there filed a motion to dismiss for the reasons that the justice before whom he was tried was without jurisdiction, and also that section 75 of chapter 169 of the Acts of 1905 (Section 2106, Burns 1926) is unconstitutional. The motion was sustained by the court, and the state appeals.

The assignment of errors by the appellant are as follows: (1) The court erred in sustaining the appellee's motion to dismiss for want of jurisdiction of the justice of the peace; (2) the court erred in holding that that part of section 75 of chapter 169 of the Acts and Laws of the General Assembly of the state of Indiana of the year 1905, being an act entitled an Act concerning public offenses, conferring upon justices of the peace in criminal cases concurrent jurisdiction with circuit courts to try and determine all cases of misdemeanor punishable by fine only, is unconstitutional for the reason that in a trial of said cause before the justice the defendant would be subject to deprivation of his liberty and property without due process of law as by the 5th and the 14th amendments to the Federal Constitution guaranteed because of the justice having a direct, personal, substantial, pecuniary interest in finding against the defendant for the costs which the justice would receive as his personal fee on a conviction.

Section 75 of chapter 169, Acts 1905 (section 2106, Burns 1926), is as follows: "The jurisdiction of justices of the peace in criminal cases shall be co-extensive with their respective counties, and they shall have exclusive original jurisdiction in all cases where the fine assessed can not exceed three dollars, and concurrent jurisdiction with the criminal court and circuit court to try and determine all cases of misdemeanors punish-

able by fine only; and in trials before justices, fines to the extent of twenty-five dollars, with costs, may be assessed; and they shall have jurisdiction to make examination in all cases; but they shall have no power to adjudge imprisonment as a part of their sentence, except in the manner specially provided in this act."

Section 2109, Burns 1926, provides what fees justices of the peace may charge and what salaries certain justices of the peace are to receive. Justices of the peace located in townships having a specified population are placed upon a salary and those in townships having a less population are upon a fee basis. This court takes judicial knowledge of the fact that the justices of the peace in Steuben county are upon a fee basis, and therefore the justice of the peace of Pleasant township, Steuben county, received for his remuneration in the trial of criminal cases, fees as provided by statute.

When a criminal action is appealed from a justice of the peace, the cause is tried *de novo*. *Peele* v. *State* (1903), 161 Ind. 378, 68 N. E. 682; *Harlan* v. *State* (1921), 190 Ind. 322, 130 N. E. 413.

But if the justice had no jurisdiction of the cause of action, the circuit court can not acquire jurisdiction on appeal. *Jolly* v. *Ghering* (1872), 40 Ind. 139; *Mays* v. *Dooley* (1877), 59 Ind. 287; *Horton* v. *Sawyer* (1877), 59 Ind. 587.

The question presented in the instant case is: Does a justice of the peace have jurisdiction to hear a criminal case under section 75, chapter 169 of the Acts of 1905, where his remuneration depends entirely upon fees as provided?

Section 14 of Article 7 of the Constitution of Indiana provides that: "A competent number of justices of the peace shall be elected by the voters in each township in

the several counties. They shall continue in office four years, and their powers and duties shall be prescribed by law." It will thus be seen that our Constitution provided for the office of justice of the peace. It is one of the oldest offices known to our law, and our state, as well as practically every other state, from its organization has recognized the need and usefulness of the office of justice of the peace. Through all these years, with few exceptions, it has operated on the fee basis.

The appellee practically rests his contention upon the case of *Tumey* v. *State of Ohio,* decided March 7, 1927, and reported in 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243, decided by Chief Justice Taft. If the facts in the instant case were the same as those in the Tumey case then the opinion of Chief Justice Taft should be followed, but as we view this opinion it is not decisive of the questions before us in the instant case.

In the case of *Tumey* v. *State of Ohio, supra,* the defendant, Tumey, was charged with unlawfully possessing intoxicating liquor, and was arraigned and tried before the mayor of the village of North College Hill, Hamilton County, Ohio. Tumey moved for his dismissal because of the disqualification of the mayor to try him under the 14th Amendment. The question in the case was whether certain statutes of Ohio in providing for the trial by the mayor of a village of one accused of violating the Prohibition Act of the state (General Code Ohio, Sections 6212-13, et seq.), deprive the accused of due process of law and violate the 14th Amendment to the Federal Constitution because of the pecuniary and other interests which those statutes give the mayor in the result of the trial. Chief Justice Taft held that these statutes did violate the 14th Amendment, and denied the accused due process of law. In order to fully comprehend and understand the opinion

of Judge Taft it is necessary to consider these Ohio statutes.

Section 6212-15, General Code of Ohio provides that: "No person shall, after the passage of this act . . . manufacture, . . . possess . . . any intoxicating liquors."

Section 6212-17 provides that: "Any person who violates the provisions of this act . . . for a first offense shall be fined not less than one hundred dollars nor more than one thousand dollars; for a second offense he shall be fined not less than three hundred dollars nor more than two thousand dollars; for a third and each subsequent offense, he shall be fined not less than five hundred dollars nor more than two thousand dollars and be imprisoned in the state penitentiary not less than one year nor more than five years."

Section 6212-18 provides, in part, that: "Any justice of the peace, mayor, municipal or police judge, probate or common pleas judge within the county with whom the affidavit is filed charging a violation of any of the provisions of this act, when the offense is alleged to have been committed in the county in which such mayor, justice of the peace, or judge may be sitting, shall have *final* jurisdiction to try such cases upon such affidavit *without* a *jury,* unless imprisonment is a part of the penalty, but error may be prosecuted to the judgment of such mayor, justice of the peace, or judge as herein provided."

The statute of Ohio provides that: "Error from the mayor's court lies to the court of common pleas of the county, and a bill of exceptions is necessary to present questions arising on the evidence. Sections 10359, 10361, General Code Ohio. The appellate review in respect to evidence is such that the judgment can only be set aside by the reviewing court on the ground that it is so clearly unsupported by the weight of the evi-

dence as to indicate some misapprehension or mistake or bias on the part of the trial court or a wilful disregard of duties."

Section 6219, provides that: "Money arising from fines and forfeited bonds shall be paid one-half into the state treasury credited to the general revenue fund, one-half to the treasury of the township, municipality or county where the prosecution is held, according as to whether the officer hearing the case is a township, municipal, or county officer."

Section 6237, provides that: "The council of any city or village may, by ordinance, authorize the use of any part of the fines collected for the violating of any law prohibiting the manufacture and sale of intoxicating liquors, for the purpose of hiring attorneys, detectives, or secret service officers to secure the enforcement of such prohibition law. And such council are hereby authorized to appropriate not more than five hundred dollars annually from the general revenue fund, for the purpose of enforcing the law prohibiting the manufacture and sale of intoxicating liquors, when there are no funds available from the fines collected for the violation of such prohibitory law."

Under the authority of the last section the village council of North College Hill passed an ordinance consisting of five sections. Section 1 provided that fifty per cent of moneys hereafter paid into the treasury of said village, that is one-half of the share of all fines collected and paid into and belonging to said village received from fines collected under any law of the state of Ohio, prohibiting the liquor traffic, shall constitute a separate fund to be called the secret service fund to be used for the purpose of securing the enforcement of any prohibition law. .

Section 2 provided that deputy marshals of the village shall receive as compensation for their services in

securing the evidence necessary to secure the conviction of persons violating the law of the state, prohibiting the liquor traffic, an amount of money equal to fifteen per cent of the fine collected, and other fines allowed by law.

Section 3 provided that the attorney at law of record prosecuting persons charged with violating the law of Ohio prohibiting the liquor traffic shall receive as compensation for legal services an amount equal to ten per cent of the fine collected in all cases, whether the plea be guilty or not guilty.

Section 4 provided that detectives and secret service officers shall receive as compensatoin for their services in securing the evidence necessary to secure the conviction of persons violating the law of the state, prohibiting the liquor traffic, an amount of money equal to fifteen per cent of the fine collected.

Section 5 provided that the mayor of the village shall receive or retain the amount of his costs in each case, in addition to his regular salary, as compensation for hearing such cases.

It will thus be seen that the state of Ohio has provided an elaborate system to enforce the prohibition law and to encourage the officers to enforce the law by special inducements. And the opinion discloses the fact that between May 11, 1923, and December 31, 1923, the total amount of fines for violation of the prohibition law collected by the village through its officers, was more than $20,000. Of this amount the prosecutor received $1,796.50; the deputy marshals and detectives received $2,697.75, and the mayor received $696.35.

This large amount of money clearly shows the temptation the mayor and other officers would have in enforcing the law, and while many officers who believe in honesty and fairness in enforcing the law would not yield even to this alluring temptation, yet there are others who would, and consequently Chief Justice Taft held

that a law of such a nature violated the 14th Amendment and deprived a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct personal, substantial pecuniary interest in reaching a conclusion against him in his case.

In the course of the opinion, Judge Taft said: "But the pecuniary interest of the mayor in the result of his judgment is not the only reason for holding that due process of law is denied to the defendant here.

"The statutes were drawn to stimulate small municipalities, in the country part of counties in which there are large cities, to organize and maintain courts to try persons accused of violations of the Prohibition Act everywhere in the county. The inducement is offered of dividing between the state and the village fines provided by law for its violations. The trial is to be had before a mayor *without a jury,* and without opportunity for *re-trial,* and with a review confined to questions of law presented by a bill of exceptions, with no opportunity by the reviewing court to set aside the judgment on the weighing of evidence, unless it should appear to be so manifestly against the evidence as to indicate mistakes, bias, or wilful disregard of duty by the trial court. . . . It appears from the evidence in this case, and would be plain if the evidence did not show it, that the law is calculated to awaken the interest of all those in the village charged with the responsibility of raising public money and expending it, in the pecuniary successful conduct of such a court. The mayor represents the village and can not escape his representative capacity. On the other hand, he is given the judicial duty first, of determining whether the defendant is guilty at all; and, second having found his guilt, to measure his punishment between one hundred dollars as a minimum and one thousand dollars as a maximum for first of-

fenses, and three hundred dollars as a minimum and two thousand dollars as a maximum for second offenses. With his interest as mayor in the financial condition of the village and his responsibility therefor, might not a defendant with reason say that he feared he could not have a fair trial sentence from one who would have so strong a motive to help his village by conviction and a heavy fine?"

In the Tumey case, under the law and under the facts, there was everything to lead the defendant to reasonably believe he could not have a fair and impartial trial. The stage was set against him from the inception of the trial.

The law of Indiana as applicable to a trial before a justice of the peace provides for a change of venue (Section 2100, Burns 1926) from the justice of the peace and also from the township. It also gives the defendant a right to trial by jury. The fees are small and not sufficient to justify the fear that the justice of the peace would be influenced to convict in order to recover his fees. And if the defendant entertains such fears he has the right to call for a jury, and also to a change of venue from the justice. He is safeguarded on every hand. If convicted either by the justice or jury, he has the right to an appeal to the circuit court and there try his case *de novo* either before the judge or jury.

The office of justice of the peace has come down to us through the ages and has often been designated as the "poor man's court." It has a place in our system of courts and is of great importance in the smaller towns and villages of our state in the trials of minor civil and criminal actions.

It may be true that in some instances the justice has convicted in order to secure his fees, but because some justices have been too weak to withstand this tempta-

tion the whole system should not be condemned and up-rooted from our judicial system.

As heretofore stated the fees of the justice of the peace are small and regulated by statute and they may be properly ignored as within the maxim *"de minimis non curat lex."*

We hold that the lower court committed error as set out in appellant's assignment of errors and that this cause should be reversed.

Cause reversed.